Today is a great day. Nineteen years ago on Sunday, Congress passed the Religious Land Use and Institutionalized Persons Act, and today the Eighth Circuit has the opportunity to set the standards of the parameters of the land use portion of VELUPA. Now this Court has dealt with a number of the prisoner side cases, but the land use side is one that hasn't had a lot of litigation here in the Eighth Circuit, and today is our opportunity. I think the question that really permeates through the appeal and the one that the District Court got hung up on is, and the one that's argued by Kirkwood is, what really is religious exercise? The question really is, is how do the men of St. John Vianney experience and encounter God on the athletic fields? Counsel, didn't the District Court assume that it was religious expression? I think the District Court had a very hard time distinguishing between, isn't this just baseball? I think the Court- I thought the District Court ended up, but tell me if I'm wrong, I thought the District Court ended up assuming it was an expression of religious belief. It certainly did, but the undercurrent of the opinion of the judge simply was, it's just baseball. And let me kind of hit that head right on the head, because I think that's a question that the Court's probably interested in, and the one that Kirkwood really plays or really argues in this matter. There is a difference between the men of Vianney and the other five schools, Catholic high schools here in St. Louis, and others when it comes to athletic fields and how the education works, because in Vianney and the Catholic schools here in St. Louis, religion permeates every single class, and it permeates athletics as well as science and math and everything along those lines. The religious parents bring their students to Vianney for education, but the question is, how do we attract those secular students, the ones that don't have the religious basis and their parents aren't inculcated with that same type of belief? We have tremendous athletic facilities, and we have the ability to have those facilities that allow secular students to come and see what the men of Vianney do when they're on the field. And help the teams. And help the teams, too. We coach the way we approach our players, how we pray before games, how we behave before our families and our parents, the whole nine yards. Everything we do is to the advancement of religious exercise in this matter. If you look in this case, every school kind of has a niche of its own. For example, Belmont University in Nashville, Tennessee is a Christian school, and it's really based on music education, and it's also based on basketball. Here at Vianney, it's using athletics, and the athletics are so important in this matter. The arc of history. You haven't mentioned SLU High yet, either. I was going to say SLU, I didn't want to raise any type of issues here, but it's a great school. If you mention Belmont, you've got to mention SLU. The arc of history is that religious entities have started things that have ended up to be secular now. For example, hospitals were started by the nuns in the Sisters. Universities and schools. Art prior to the 16th century was all religious. Music prior to the 16th century was all religious. Exploring new worlds, orphanages, adoptions. All of those things, now that we consider secular, started as religious. There's a difference in thinking, I believe, between is it just baseball, or is there something religious to it, and I think we have to start with that premise that religious is part of this whole experience that gives way to what we do here at Vianney. I guess the next question that the court might have is, well, why are lights required now, but they weren't required for 50 years beforehand? The reason is that things have changed in the last 50 years. There are athletic events that were popular 50 years ago that just aren't popular now. There are things that are popular now that weren't popular, we didn't even think of. When I was in school 30 years ago, for example, squash was a real big thing. Now it's not. It's ultimate frisbee. It's lacrosse. It's baseball. At Vianney, baseball, you have a ninth grade team, you have junior varsity, you have varsity, you have other teams as well. All of them need time to practice and to play on the field. When the season starts at the end of February, it gets dark at 4 o'clock, you're going to need that time to be on that field to practice. Given that religion permeates all aspects of the school and of athletic events, is it at night? It is, Your Honor. Because Vianney can have no meaningful use of the lights. Let me kind of break it down to this way. To have a field, or to have a team, we need a field to play on. To compete, we need to play against opponents. Opponents within a conference have lighted fields and you have to schedule those times to do all those things. We're unable to fully live out our mission of forming young men for spiritual, academic, and personal excellences because its students do not have the necessary access to that sports field throughout the day. It's particularly necessary in that late winter, early spring months when practices start on those fields for lacrosse, for baseball, for frisbee, and the other things that have occurred there. As the court knows, the Congress didn't define substantial burden when it enacted RLUIPA. In Holt, the United States Supreme Court stressed that RLUIPA's substantial burden inquiry focuses only on the religious exercise being burdened, not on whether the claimant is able to engage in other forms of exercise. Where the district court went wrong here is the district court used a test from the Seventh Circuit and banned it, the effectively impractical test, by basically cutting out the legs of the substantial burden claim for Vianney here. Counsel, when did lights, when did nighttime use of the field become essential to carry out the religious function and mission of the institution? We believe in 2012 it occurred. That's when we did our master plan for the entire field where, again, not just looking at baseball, but looking at all uses of the property. Where's the best place that we can have an athletic field and how can we use it the most to accomplish the scheduling and the athletic needs for these teams? How can we make sure that we can use best uses and not affect or harm any neighbors? For example, we have a high school football field, as the council recognizes in their brief, that's lighted and it meets all Kirkwood requirements. But our baseball field, there's only one location, the record's pretty clear, where it can be and that's where it's at. And there's only one neighbor, one person that objects to this whole issue with this light. Well, how long has the baseball field been in use? It's, well, it's been renovated, are you asking when it was renovated or? No, I'm asking how long has it been used by the school for its baseball program? It's been used for many years. I don't have the exact number. So that brings me back to my question, if it's been used successfully for many years, when did it become necessary from a religious standpoint, from the standpoint of carrying out the religious function of the institution, when did lights become essential to that? 2012. And what happened in 2012 to make it essential? At that point in time, there was a recognition by Vianney that it needed to provide additional athletic events for the men of Vianney to not only attract the existing students and students coming through the Catholic system, but also secular students as well to that particular program. That's when we did the master plan that would be renovating that particular field to use it for all of those events, for lacrosse, baseball.  Lighting plan came in in 2015, but the master plan itself showed the lights on it at that particular time. Your RLUPA claim is based on the equal terms provision? We do have an equal terms claim, yes. How was Kirkwood High School treated any differently in that, as I understand it, neither have baseball fields, and neither have gotten exemptions to the 2012 ordinance? Sure. So the city treated Vianney on a less than equal basis, which is the as-applied claim than Kirkwood, because the city allowed Kirkwood High School to use lights and a sound system. Remember, the lights and the sound system are at play, and it's an outdoor athletic complex without restrictions or conditions. They're both in the same zoning district. Students assemble at Kirkwood High School for the same events that we have, whether they're athletic or charitable events, things like that. Well, Vianney has a lit football field, right? Correct. And so does Kirkwood High School. That is correct. And neither have a lit, well, you have a lit football field, but Kirkwood High School doesn't have a lit baseball field. That is correct. And they've never been given an exemption by the city for a lit baseball field, right? They've never asked, so they've never given an exemption. But they do have an aquatic center that was built after this event occurred, where there are lights on the outside of that aquatic center that they were given an exemption for. And that's definitely in the record as well. Did I answer your questions? I'm going to leave the remaining time for rebuttal. Very well. Thank you, Your Honor. Good morning, Mr. Hassell. May it please the court. Let me address the question, Judge Benton, that you asked. Judge White found, and I'm reading it, the court holds that Vianney has not demonstrated that its ability to use the lights and sound system constitutes a religious exercise. That's on page 15 of his opinion. And I have to admit to you, it's a little awkward for me being here opposing Vianney because I've been a supporter of Vianney for a long, long time. But when Vianney comes- They'll probably still let you support them too. I'm sorry? They'll probably still let you support them. I hope so. Proceed. We'll find out. But when Vianney comes before this court and tells you that it is entitled to violate Kirkwood's lighting regulations to the detriment of the neighbors because everything Vianney does is for religious purposes, and playing baseball under the lights is a religious exercise, and according to Vianney, to play baseball at night is necessary to live its religious mission. As a result of that, they say that the enforcement of lights substantially burdens Vianney. Let me start out by pointing out to the court that if this court adopts Vianney's position that everything that they do constitutes a religious exercise, that we're going to run afoul of the Establishment Clause. Because the Establishment Clause makes clear that there's a balancing, there's a level playing field that must take place here. So let's- and it actually would violate RLUIPA and the established case law. So let me start from the beginning as to whether or not everything that Vianney does, or any playing baseball at night, is a religious exercise. The Supreme Court in Burwell v. Hobby Lobby stated, the exercise of religion involves not only belief and profession, but the performance of, or abstention from, physical acts that are engaged in for religious reasons. So the question becomes, when the boys are out competing and playing baseball, is that for religious reasons? The Second Circuit in the Westchester case noted that RLUIPA occupies a treacherous narrow zone between the Free Exercise Clause, which seeks to assure that government does not interfere with the exercise of religion, and the Establishment Clause, which prohibits the government from becoming entwined with religion in a manner that would express preference for one religion over another, or religion over irreligion. And what you just heard Mr. Dalton tell you is that Vianney has its niche. Playing baseball at night is its niche. Different than other religious organizations apparently, and different than Kirkwood High School. I've met other religious organizations who claim it's a mission too, and an outreach. They use other terms. And outreaching has already been determined that just because you want to reach out to others and draw them in to learn more about your religion is not enough. The Sixth Circuit, the Tenth Circuit, and the Second Circuit clearly address that. They did that in the Chabad Lubavitch case, and they also did that again in the Westchester case. Mr. Haslund, is it in the record whether the players routinely pray before a game, and does that matter? I don't think there's any factual dispute about that, but so let's look at the facts as to what constitutes an exercise, what they say constitutes an exercise of religion. A prayer before the game, and then the mingling, the co-mingling. So, if that's the case, then Vianney – What about the attraction of students to the school? Absolutely, Judge. Goodness gracious. That's what sports do, you know. Your team has a good year. Right. They won the state championship. Proceed. No. What the courts have said, the Second Circuit, again the Sixth Circuit, and the Tenth Circuit is mere attracting students to come. For example, in Chabad Lubavitch, what they said was a swimming pool on the Chabad's property was not a religious exercise, even though it would draw people to the Hebrew school and they would learn about that. That's not a religious exercise. It is a secular exercise that is, in fact, being used – Do you want us really to venture into that? Didn't you tell me that Judge White assumed it was a religious – Judge White determined that Vianney had not demonstrated, had not produced any facts to support that it was a religious exercise. And what I was – I heard you wrong. I'm sorry. If you look at the facts, Mr. Dalton says that this really became essential in 2012. Well, when the modifications to the baseball field were proposed in 2014 and 2015, the lights were not included because it was doubtful as to whether or not they could ever put lights on. And in fact, in May of 2015, the board of directors of Vianney agreed that if the soil stabilization issues came about, they would take funds for the lights and move it over to soil stabilization and eliminate the lighting. That's what they said. In fact, when you go back and you look at it in the application for the variance, Vianney's president said that the purpose is for competition and practice. When they presented 16 hours of testimony before the board of adjustment, evangelism and prayer was never mentioned as a purpose for which they should be entitled to a relief from the lighting regulations. And in fact, when we took the deposition of Vianney's CFO, he testified that it was ridiculous to suggest that they needed these lights at this level in order to engage in religious exercise. The answers to interrogatories also point out that the purpose of these lights was for competition and practice, not for religious exercise. And tellingly, Vianney pointed out in their motion for summary judgment to the Marianist principles, the five pillars of the Marianist principles, and in that memorandum, they said that athletic activities are explicitly cited in two of the five pillars. Upon examination, that wasn't true. The Marianist mission never mentions the words athletics. In fact, Vianney uses these words evangelism, fellowship, prayer, worship as buzzwords because that's what the courts say you're to look at. But what we're really talking about is competitive baseball. As we said, judges, interacting with the community is not enough. In Westchester School, again, the Second Circuit, it said, for example, if a school wishes to build a gymnasium to be used exclusively for sporting activities, that kind of expansion would not constitute religious exercise. Now, they said, well, it's exclusively. But what they're talking about is when you have expansions in which there is going to be religious education associated with it, that's okay. The rectory that was being built in the Chabad-Lubavitch case was not deemed to be under RLUIPA. The swimming pool that they wanted was not deemed to be under RLUIPA. And again, I'll refer you to the Second Circuit in which they identified that the district court there had concluded because the school delivers a secular and religious education in a religious environment, any program of the school to improve its facilities in a manner that improved the students' overall educational experience would be protected by RLUIPA. The court went on to say such logic would mean that if you had two identically situated schools submitted factually identical applications to a zoning code that to rebuild and enlarge their gymnasium facilities, one being a religious school, the other a secular school, the zoning board would be free to reject the application of the secular school but not the religious school. That's not what RLUIPA stands for. The Second Circuit addressed it, the Tenth Circuit addressed it, the Sixth Circuit went on in the Living World Water case recognizing that an on-site gymnasium may be more convenient for the church. But the Sixth Circuit nevertheless is hard-pressed to conclude that Living World would be unable to carry out its church missions and ministries without a swimming pool. We're talking about the same thing here. Can they carry out their church missions without a lighted baseball field? Well, for 57 years, now 60 years, they've been playing baseball on that field without lights. So the suggestion that somehow in 2012, lights have been around a long time, I don't understand how in 2012 something changed and as a result of that they needed lights. To your point, Judge Grunder, you then went on to the substantial burden test. Clearly, Bionni can play baseball during the day. It can actually use its lights at night subject to the lighting regulations. They couldn't play competitive baseball. There's no question about that. But could they use the lights in some activities? And if not baseball for baseball's sake, the problem is the Missouri High School Athletic Association won't let them play competitive baseball. That's true because they can't meet the lighting regulations. That doesn't mean they can't use the lights. And again, Judge White determined that there's no significant inhibition, no meaningful curtailment, which is what the court requires when you get to impeding upon some form of religious exercise assuming that it is. What we're talking about is limiting the scale because again, Mr. Dalton talked about how in February the sun goes down earlier. That hasn't changed. That's been existing since Bionni's existing. My point is for 60 years now, they have been playing baseball on that field without lights. So is it a substantial burden that they cannot now play baseball? If Kirkwood High School comes to you to put lights on their field, they have testimony in the record that you say they can do whatever they want to their grandparented in? No, sir. Well, let's take them one at a time, Judge. Okay, please. The lights on the football field, just like the lights on Bionni's football field, were installed prior to the adoption of the lighting regulations. So the football field has lights and it's grandfathered in, but I'll also add there's no testimony whatsoever that those lights on Kirkwood High School's football field violate the lighting regulations. So for purposes of the record, A, they were grandfathered, and B, there's no evidence that they violate the lighting regulations. Bionni has lights on its football field, both installed prior to 2012, which is when the lighting regulations came. So now, if Kirkwood High School came to us and asked to put up lights on its baseball field that violated the lighting regulations, I would tell them, no, you cannot do that. That's a public health safety issue. I thought you said in your briefs someplace that school districts were different and you couldn't really control them and you had a whole bunch of excuses. I don't have any excuses, Your Honor. The courts tell me... Well, you call them reasons. Just tell me. I have a reason. But you claim that you can't really control the school districts. You can control the school districts only for public health safety reasons. And the example that you always get in the Normandy case talks about it as boilers and elevators and building code regulations. But we have taken the position with Kirkwood High School that lights are public health safety. For example, when they wanted to install their... Is they Kirkwood High School? Kirkwood High School. I'm sorry. Kirkwood High School wanted to install signage, the video signage. They were subject to regulations because that affects traffic. All of the reasons why you limit the video signage, Kirkwood High School was subject to that. Again, Kirkwood High School may fight me on this, but it is my position that these lights are a public health safety, and there's a compelling governmental interest in making sure that the light encroachment onto the neighbors does not occur, that it meets the code. So if Kirkwood High School sought lights, we would. And if they violated the lighting regulations, we would turn them down. No question about it. And again, that gets to the compelling interest part, and again, I can go through the equal terms provision as well. Clearly there's... Is it really a compelling interest? I'm sorry? Is it really a compelling state interest? It is a compelling interest, Your Honor. If you heard the 16 hours of testimony as to how these lights... You sure it's not more aesthetics or... No. No, no, no. The testimony before the Board of Adjustment was that these lights are impeding upon them, they can't sleep, that they can read books in their backyard, they're encroaching into their homes so badly that it is affecting them. And I might add, Judge, that this lighting standards that Kirkwood has, we put in our brief, is not unique to Kirkwood. Almost all cities that I'm familiar with have lighting regulations which apply the exact same standards, because if you're near another field, you shouldn't be encroached upon by those lights. They have to meet the lighting regulations. We strongly... Did this come about in 2012? This change for all the cities you're trying to talk about? No, no, no. Well, I don't know what the other cities adopted them, but there was certainly a wave... I think you're overstating. Go ahead. Well, I apologize if I'm overstating it. My point simply was that there are many cities that have adopted lighting regulations, and they're all based upon public health, safety, and general welfare. In this case, was the decision made to prohibit the lights based on a period of comment and complaint or objection? No, sir. I think there... I may have cut counsel off, but I think he was about to say there was only like one, maybe one resident that's really objecting to this? That is not a fair characterization. Poor Sarah Molenski was there when she was nine months pregnant, and there was 16 hours of testimony from all of these residents. There was a lot of testimony from residents. What he's trying to tell you is that there were three properties that clearly... That the lighting regulations clearly affect, because they violate the lighting regulations. And there was only one of the three that came and spoke about it, but there was a myriad of the neighbors who joined in the objection. Again, for hours on hours, and the testimony in the record is replete with the testimony as to how these lighting regulations negatively impacted them. So there's no... The purpose of the lighting regulations is really for the safety and the benefit of the surrounding properties. And again, I want to touch briefly upon the equal terms provision. Again, Judge, I think you hit upon it. We've treated them equally throughout this process, certainly for the same reasons Missouri RFRA is applicable, and I don't have time to talk about inverse condemnation, so I'll leave that based upon our briefs. Thank you. Thank you. At Joint Appendix 109, Your Honor, there is the reference there is three properties which are impacted, but there's only one property owner, one property owner that is complaining of this. And his complaint is that lights cause cancer. Athletic field lights cause cancer. If that's the case, the St. Louis Cardinals have got a bunch of problems coming up in the playoffs. Your Honor, the issue that we have before us is that we've tried to comply with the ordinance. In fact, at one point in time, we did come up with a solution for the ordinance because the candles were, the light candle was measured at ground level, and we were going to put up a shield or a fence at ground level to block it. And in response, the city changed the ordinance. It changed the ordinance so that it would be measured at any point whatsoever during this matter. So there is no way that we can satisfy this neighbor. Let me respond to a couple other items. One is the Chabad Lubavitch versus City of Litchfield case. I think counsel overstated that a little bit. I actually tried that case two summers ago after it came back from the Second Circuit. In that case, the Chabad, it was found to be a religious exercise. And in that case, the court went room by room or item by item to determine what was religious exercise or not. And the only thing that the court found that was not a religious exercise was the pool, and that was it. What we, let's talk about the Hobby Lobby case as well, where the Supreme Court also went on to say that there are times municipalities may need to spend extra money to comply with for LUPA. And in here, if this is an issue with the one neighbor, perhaps it's the municipality's responsibility to pay for that lighting, you know, like in hotels, you have the shades or whatever that block out all the light or things like that for the neighbor as well. Sometimes you can't satisfy everybody. I know as a city council member for three terms, you know, you're going to make a decision and half the people like it and half the people think you're an idiot. So it's just, that's just the way politics works. The biggest issue I want to address, though, is we're not saying that where LUPA provides carte blanche to the school and that there's no limits on religious exercise. We're not saying that. We've never said that. There are limitations, for example, fire safety. We will comply with all fire safety rules and we have complied with all fire safety rules in our buildings. Public safety, the same reason as well, making sure that police and the students are protected. Fraud and criminality, I mean, like in the Reynolds v. United States case where the court said on the pre-exercise claim that, you know, we're not going to allow polygamy. There are limits to the pre-exercise claim and there are limits to LUPA as well. So there is, there are definite limitations on religious exercise that we would do that. All of this goes back to the idea of working with our students and working with prospective students to attract them to Bionic, to cultivate them into the religious faith, into the Catholic institution and the Marianist way of life to create the men that Bionic are today. With that, the last comment I would make is I would ask the court to, is to please don't follow the Sixth Circuit and live in water and say this could or could not be a RLUPA violation and adopt a test. Adopt a test like in the 11th Circuit in Midrash where they clearly say this is the test for the Sixth Circuit where they've said the same thing. It's very difficult for us to litigate these claims going fact by fact and case by case if we don't have a test. So I would just ask the court to do so and thank you for your time and your courtesies.